THE LAWRENCE-SMITH SCHOOL, INC., Plaintiff, *v.* THE CITY OF NEW YORK, Defendant.

Supreme Court, Special Term, New York County, January 4, 1938.

*Smyth & Tuttle [Nathan A. Smyth, Edward M. de Castro* and *John F. Faulkner* of counsel], for the plaintiff.

*Paul Windels, Corporation Counsel [Oscar S. Cox* and *Francis W. Lehrich* of counsel], for the defendant.

SHIENTAG, J.    Plaintiff is an educational corporation which conducts an elementary and secondary school.    It brings this action to cancel as a cloud on title real property taxes for the years 1935, 1936 and 1937, claiming that it is entitled to exemption under subdivision 6 of section 4 of the Tax Law.    The defendant, The City of New York, disputes the right to exemption and urges that though in form non-profit and non-stock, plaintiff in reality is a profit-making corporation within the meaning of the Tax Law.

A brief history of The Lawrence-Smith School is essential to a proper consideration of the case.    The predecessor of the school now conducted by the plaintiff was established in 1919.    It was a private institution.    Several years later and during 1925 The Lawrence-Smith School, Inc., a stock corporation, was organized to take over the business theretofore conducted by C. Lawrence-

Smith. Smith became the president of the new corporation and received stock for his interest in the enterprise. A considerable sum of money was expended for alterations.

In 1929 the corporation, desiring to expand, increased its issue of stock. Two years thereafter Wilson Parkhill, an instructor in history at the school, upon request of Smith, advanced $5,000 to him, for which Parkhill received 250 shares of Smith's stock in the corporation. In 1932 Parkhill again advanced $5,000, this time directly to the corporation. It seems that the corporation was constantly running into financial trouble. Real property taxes could not be entirely met and there was difficulty in paying the interest on the mortgage. The advances made by Smith and Parkhill could not be paid off. In the fall of 1932 the corporation apparently was insolvent. The land and building were appraised at $155,000. The mortgage was $150,000 and current liabilities exceeded current assets by approximately $10,000.

Accordingly, in October, 1932, the name of the corporation was changed from The Lawrence-Smith School, Inc., to the 168 East 70th Street Corporation. On October twentieth the Board of Regents of the State of New York, upon application made to it, issued a provisional charter to The Lawrence-Smith School, Inc., the plaintiff herein. The 168 East 70th Street Corporation thereupon entered into a contract of sale with the plaintiff, by the terms of which the former was to transfer all of its assets to the latter, in consideration of the assumption by the plaintiff of all the liabilities of the 168 East 70th Street Corporation. In addition plaintiff was to pay $10,000 for the good will of the school, to be evidenced by a note bearing five per cent interest, to issue its note of $3,000 to Smith and its note of $5,000 to Parkhill for the prior advances made by them to the original The Lawrence-Smith School, Inc., a stock corporation. Each note contained the following provision: "Payments on account of this note shall be due and payable by the undersigned from time to time only from the net income of the undersigned when, as and if earned, over and above such reserves as its board of directors in their sole discretion may set up for purposes of amortizing the mortgage on the land and building belonging to the undersigned and of meeting other existing and prospective liabilities of the undersigned."

Each note further provided that if The Lawrence-Smith School, Inc., "shall cease to conduct business, the full amount of principal and interest due thereon shall be immediately due and payable out of any assets then owned by your corporation."

The plaintiff has continued doing business at the same place with substantially the same staff and with tuition rates in many instances

higher than those in effect when the original The Lawrence-Smith School, Inc., was in existence in 1932. During 1935, 1936 and 1937, however, plaintiff paid no real estate taxes to the city.

The 168 East 70th Street Corporation has never been dissolved. Its only asset is plaintiff's $10,000 note. While a large percentage of the stockholders have canceled and turned in its stock, a substantial amount of stock is still outstanding. The city takes the position that on this financial set-up plaintiff is not entitled to claim exemption, at least not until the obligations it assumed are canceled. In other words, the city argues that though the school ostensibly is to be conducted without profit by a non-stock educational corporation, any profit that it does make is to be devoted to the payment of obligations of a predecessor corporation concededly organized for profit.

The other issues raised by the city are not sustained by the record. The provisions of the Tax Law denying exemption to an organization which discriminated on the grounds of race, color or religion when it held itself out as non-sectarian, were not violated by plaintiff. Neither did the small sums received by plaintiff as donations from a religious institution for use of part of the premises in which it held its services constitute a violation of the statute disentitling plaintiff to exemption.

The Tax Law (§ 4, subd. 6) exempts from taxation the following: " The real property of a corporation or association organized exclusively for * * * educational * * * purposes, and used exclusively for carrying out thereupon one or more of such purposes. But no such corporation or association shall be entitled to any such exemption if any officer, member or employee thereof shall receive or may be lawfully entitled to receive any pecuniary profit from the operations thereof, except reasonable compensation for services * * * or if the organization thereof for any such avowed purposes be a guise or pretense for directly or indirectly making any other pecuniary profit for such corporation or association, or for any of its members or employees."

In considering tax exemption statutes, the courts, in line with what obviously is the legislative policy, have refused exemption unless it clearly appeared that the corporation was altogether free from a profit-making purpose. Exemptions from taxation are in derogation of the sovereign authority of the State, and it clearly is the legislative intent that statutes conferring such exemptions should not be extended beyond their express provisions. Such statutes confer a favor upon the recipients of the exemptions, and before a class of persons or property is relieved from the recognized obligation to pay taxes, no matter how deserving of assistance, it must be shown that both the spirit and the letter of the law have been met.

In order to make certain that no organization is permitted improperly to evade the payment of taxes, the statute under consideration makes a number of provisions to insure strict compliance therewith. The section, for example, prohibits exemption not only if any officer, member or employee actually shall receive any pecuniary profit from the operations of the educational institution, but even if any of them " may be lawfully entitled to receive " it. It further provides that exemption shall not be allowed if the organization though ostensibly non-profit-making in character is really a guise or pretense for making profit from its operation.

I am of the opinion that the plaintiff is not entitled to an exemption as a non-profit corporation within the meaning of the tax statute. The plaintiff's predecessor was insolvent. The mortgage on the property about equaled its appraised value; the tangible assets of the old company were less than its liabilities and current liabilities exceeded current assets by about $10,000. The assets of the old corporation, which was a stock corporation organized specifically for profit, were transferred to the new corporation, which was chartered to do business by the Board of Regents as a non-profit enterprise. The new corporation, therefore, did not receive any valuable assets when it became the transferee of the property of the old corporation. In fact, it assumed liabilities beyond the assets and in addition thereto the new corporation undertook to pay three separate and distinct obligations, one in the sum of $10,000 purportedly representing the good will of the old corporation, the other for $3,000, an obligation due Smith, the moving spirit of the new corporation, and $5,000 to one of the instructors at the school. Obviously, the arrangement was entered into to make good such obligations out of profits made in the conduct of the school.

In a long line of cases in many jurisdictions, including New York, it has been consistently held that private schools conducted under an arrangement such as the one in the instant case come within the ban of the statute and are not entitled to an exemption from taxation. (*Town of Montclair* v. *State Board of Equalization of Taxes,* 88 N. J. L. 374; 96 A. 44; *Carteret Academy* v. *State Board of Taxes & Assessment,* 104 N. J. L. 165; 138 A. 919; *Montgomery* v. *Wyman,* 130 Ill. 17; 22 N. E. 845; *People ex rel. Rye Country Day School* v. *Schmidt,* 266 N. Y. 196.)

In the last cited case the Rye Country Day School was organized as an educational corporation. Subsequently its charter was amended so as to authorize it to issue stock to the extent of $100,000. The by-laws provided that the stockholder shall not receive any dividends or any distribution of profits until the dissolution of the

corporation, and that upon dissolution only after the payment of all debts. The property in that case was devoted exclusively to the operation of a private educational institution. It did not pay taxes for a long period of time. The Appellate Division in that case held that the plaintiff was organized in good faith solely for educational purposes, and that within the meaning of subdivision 6 of section 4 of the Tax Law it was entitled to have its real property exempt from taxation. The Court of Appeals, reversing the court below, said: " The corporate operation of the respondent may lawfully entitle some of its members to receive pecuniary profit other than reasonable compensation for services in effecting any of its educational purposes." The court thus held that if by any arrangement in the corporate organization, the investment made in the school might in whole or in part be returned when the corporation was ultimately dissolved, exemption under the statute was barred.

Here the case is even less meritorious. It is intended that the new non-profit corporation shall make good debts of the prior business corporation which the latter itself could not meet. Moreover, in the instant case the contract of sale provided that the full amount of principal and interest due the old corporation, and to Smith and Parkhill shall be immediately payable out of any assets owned by the corporation when it ceases to do business. The provision for such payment and division of assets upon dissolution of the plaintiff clearly forfeits exemption. In fact, here there is a further provision that at any time prior to dissolution the principal and interest of the obligations assumed are to be payable from any surplus over and above the reserve set up by the board of directors in its sole discretion as necessary to meet other existing liabilities.

It is argued, however, that this case is governed by the decision in *Matter of Manlius School* v. *Adams* (143 Misc. 459; affd., 232 App. Div. 869; affd., 257 N. Y. 549). In that case the situation was different. There the new educational institution paid the old one less than the value of the tangible assets transferred instead of more, as here. There the old corporation was solvent, instead of insolvent, as here, and yet the new educational institution in that case did not pay the old corporation anything for good will. There the new educational institution did not undertake to pay off debts to investors incurred by the prior stock corporation. These factors were undoubtedly the compelling reasons for the decision in the *Manlius* case. The court there said: " It is conceded in this case that the William Verbeck Corporation, at the time of this transfer, was the owner of property which was fairly worth, upon disinterested appraisal, lands, buildings and personalty, $431,583.26 and that

its liabilities exclusive of its capital stock were $93,854.26, leaving a net worth of $337,729, and that all the property was transferred to and has been enjoyed by the relator corporation since that time." It is clear, therefore, that the financial set-up of the two corporations distinguishes the cases.

The plaintiff has not made out a case for tax exemption, and accordingly judgment is directed in favor of the defendant. Settle findings of fact, conclusions of law and judgment, on notice.