In the Matter of SEMPLE SCHOOL FOR GIRLS, Appellant, against WILLIAM E. BOYLAND et al., Constituting the Tax Commission of the City of New York, Respondents. [351 Riverside Drive, Borough of Manhattan.]

Argued January 12, 1955; decided April 14, 1955.

384

*Francis Finkelhor* and *Edward W. Simms* for appellant. I. The court's ruling that petitioner's testimony as to the value of the school building cannot be given any weight because it failed to show that its real estate expert was qualified to express an opinion about its value is erroneous. (*People ex rel. Semple Realty Corp.* v. *Mills,* 277 App. Div. 751; *Sparkill Realty Corp.* v. *State of New York,* 254 App. Div. 78, 279 N. Y. 656; *Heiman* v. *Bishop,* 272 N. Y. 83; *People ex rel. Amalgamated Properties*

v. *Sutton,* 274 N. Y. 309; *Matter of New York Tit. & Mtge. Co.,* 277 N. Y. 66; *Matter of Board of Water Supply of City of N. Y.,* 277 N. Y. 452; *National Cellulose Corp.* v. *State of New York,* 292 N. Y. 438; *Matter of City of New York* [*Blackwell's Is. Bridge*], 198 N. Y. 84; *McGraw* v. *Mayor & City Council of City of Baltimore,* 131 Md. 430.) II. The facts that petitioner's predecessor lost money, that its board of trustees consisted of her family and the attorney for the corporation, and that she was the sole stockholder of the selling corporation, do not prima facie establish that petitioner was organized as a pretense or guise for it or her to make a profit. (*People ex rel. Doctors Hosp.* v. *Sexton,* 267 App. Div. 736, 295 N. Y. 553; *People ex rel. Manlius School* v. *Adams,* 143 Misc. 459, 232 App. Div. 869, 257 N. Y. 549; *Borough of Princeton* v. *State Bd. of Taxes & Assessments,* 96 N. J. L. 334; *Matter of Mary Immaculate School* [*Bd. of Assessors, Town of Ossining*], 188 App. Div. 5; *Bush Term. Co.* v. *City of New York,* 282 N. Y. 306.) III. Petitioner was organized and is being conducted in good faith as an educational institution. (*Association for Benefit of Colored Orphans* v. *Mayor of City of N. Y.,* 104 N. Y. 581; *Saint Barbara's R. C. Church* v. *City of New York,* 243 App. Div. 371; *Matter of Syracuse Univ.,* 214 App. Div. 375; *Croton Community Nursery School* v. *Coulter,* 283 App. Div. 716.)

*Morris Handel* for respondents. I. The trial court's finding of fact, unanimously affirmed by the Appellate Division, that petitioner's valuation witness lacked the qualifications of an expert resulting in petitioner's failure to prove an essential part of its case, is supported by legally sufficient evidence. Consequently, no question reviewable by this court is presented. (*Slocovich* v. *Orient Mut. Ins. Co.,* 108 N. Y. 56; *Jenks* v. *Thompson,* 179 N. Y. 20.) II. Tax exemption is properly denied where the applicant fails to prove by a preponderance of the credible evidence that its officers are not entitled to receive any pecuniary profit from its operations, particularly where the financial setup indicates absence of good faith and violation of other provisions of the exemption statute. (*People ex rel. Rye Country Day School* v. *Schmidt,* 266 N. Y. 196; *Lawrence-Smith School* v. *City of New York,* 166 Misc. 856, 255 App. Div. 762, 280 N. Y. 805; *People ex rel. Semple Realty Corp.* v. *Mills,* 277

App. Div. 751; *People ex rel. Manhattan Sq. Beresford* v. *Sexton,* 284 N. Y. 145; *People ex rel. Manlius School* v. *Adams,* 143 Misc. 459, 232 App. Div. 869, 257 N. Y. 549; *Borough of Princeton* v. *State Bd. of Taxes & Assessments,* 96 N. J. L. 334; *Kimberley School* v. *Town of Montclair,* 137 N. J. L. 402; *Town of Montclair* v. *State Bd. of Equalization of Taxes,* 86 N. J. L. 497, 88 N. J. L. 374.)

VAN VOORHIS, J. This appeal concerns exemption from taxation of real property under subdivision 6 of section 4 of the Tax Law, upon the ground that it is used exclusively for educational purposes.

During fifty-two years prior to October, 1950, Rosa Gunter Semple owned and conducted a girls' private secondary school in the city of New York. In 1930 she moved the school to a large stone mansion at 351 Riverside Drive, which is the subject of this proceeding, that had been purchased for the purpose for $200,000 by Semple Realty Corporation. That corporation was wholly owned by Mrs. Semple. In 1950, appellant, the Semple School For Girls, was incorporated as a nonprofit, nonstock educational institution to which a provisional charter was granted by the Board of Regents. There was then outstanding against this real property a first mortgage of $39,204, in addition to which Semple Realty Corp. owed to Mrs. Semple $157,051.36. It then transferred 351 Riverside Drive to appellant subject to the mortgage. In consideration of this transfer, appellant gave its unsecured fifteen-year bond for $111,746, which was assigned to Mrs. Semple to apply upon the indebtedness to her of Semple Realty Corp. She received another unsecured bond of $16,784.50, also due in 1965, in payment for the furnishings and other personal property transferred to the school. Neither of these bonds contained acceleration clauses, nor was annual interest payable upon them unless the school operated at a profit, and not even in that event unless its trustees should decide that the profit was not needed for the purposes of the school. It thus appears that these obligations could not be enforced until 1965, whether interest upon them was paid or not, and that meanwhile interest was payable if, and only if, the trustees voted to pay it out of annual profits earned in the operation of the school.

The Appellate Division has affirmed the order of Special Term denying exemption from taxation. Under the facts of this case, we think that this determination was correct.

In order to qualify for exemption, it is necessary for appellant to establish that this real property is " used exclusively " for educational purposes, which cannot be true " if any officer, member or employee " of the school " shall receive or may be lawfully entitled to receive any pecuniary profit from the operations thereof, except reasonable compensation for services in effecting " such purposes, or " if the organization thereof for any such avowed purposes be a guise or pretense for directly or indirectly making any other pecuniary profit for such corporation or association, or for any of its members or employees, or if it be not in good faith organized or conducted exclusively " for educational purposes (Tax Law, § 4, subd. 6).

Appellant is organized exclusively for educational purposes, and the real property at 351 Riverside Drive is used exclusively for carrying out such purposes except insofar as Rosa Semple " may be lawfully entitled to receive any pecuniary profit from the operation ". The circumstance that the venture is being operated at a loss does not signify that she is not lawfully entitled to receive pecuniary profit that may be earned. Exemption from the general property tax is not conditioned upon whether an enterprise is profitable. It depends upon whether one would reasonably expect that if a profit were made it would inure to the benefit, among other aspects, of any " officer, member or employee " of the educational corporation. Mrs. Semple is the president and chairman of the board of trustees of this school.

Special Term considered that whether Mrs. Semple may be entitled to receive pecuniary profit from the operation of the school depends upon whether the real property is worth less than the consideration appellant paid for it, and held that appellant had not proved that the property was worth as much as the purchase price. In a memorandum decision, the Appellate Division stated that " Aside from the finding of Special Term with respect to the value of the property, the petitioner has not made a showing to satisfy the requirements of the statute."

We base our decision upon all of the particular facts and circumstances of the case.

It is hardly necessary to state that appellant is not to be deprived of exemption for the reason that it is a private school. It is likewise true that exemption may not be denied for the reason that the pupils pay for the education which they receive (*People ex rel. Doctors Hosp.* v. *Sexton,* 267 App. Div. 736, affd. 295 N. Y. 553). Provided only that it meets the educational standards required by the Board of Regents, which is conceded, any appraisal by the Tax Commission of its usefulness to the City of New York would be irrelevant. The decision depends entirely upon whether the burden has been sustained of proving that any profit from the school would not redound to the benefit of Mrs. Semple. The date as of which exemption is to be determined is, of course, the tax status date (*Matter of Mary Immaculate School,* 188 App. Div. 5). Nevertheless, whether Mrs. Semple held a proprietary interest in the school at that time is affected, under the facts of this case, by whether it was then reasonable to believe that its indebtedness to her would be satisfied from its capital assets irrespective of the success of its operations. If, under the guise of a bondholder, she was really the owner of a proprietary interest in the school, exemption should be disallowed.

As has been stated, Mrs. Semple held bonds of the school in the amounts of $111,746 and $16,784.50. A memorandum submitted to the Board of Regents states that the school had personal assets approximating the latter amount, although it is not evidence of value. Appellant attempted to prove that this real property, which was the only other asset of the school, was worth $167,933.44 and that, after deducting $39,204, being the unpaid balance secured by the outstanding mortgage, a net value of $128,729.44 remains, which would be $16,983.44 in excess of the $111,746 bond held by Mrs. Semple, that had been given by the school to purchase this real property. The trial court held, however, that the only expert witness called by appellant was not qualified to testify concerning construction costs or depreciation. This witness was a real estate broker but not a builder or an architect. He would have been competent to have testified to market value based on sales or economic return from similar properties, but was not asked to do so. His appraisal of the building was based entirely upon reproduction cost less depreciation, sometimes known as " sound value ". Such a method of

building valuation has been held to be appropriate in case of " specialties ", that is to say, structures designed for unique purposes (*People ex rel. New York Stock Exch. Bldg. Co.* v. *Cantor,* 221 App. Div. 193, affd. 248 N. Y. 533; *People ex rel. Hotel Astor* v. *Sexton,* 159 Misc. 280, affd. 256 App. Div. 912, motion for leave to appeal denied 280 N. Y. 853; *People ex rel. Hotel Paramount Corp.* v. *Chambers,* 298 N. Y. 372, 375). These decisions hold that, even in such instances, the full structural value of the building (less depreciation) may only be added to the value of the land where the structural improvements are suitable to the site. The present building is not a specialty; it is a large stone mansion on Riverside Drive, obsolete for its intended use as a single-family residence, but utilized for a school. Except in the case of specialties, reproduction cost less depreciation is accepted only as establishing maximum value (*People ex rel. Manhattan Sq. Beresford* v. *Sexton,* 284 N. Y. 145). In the instant proceeding, regardless of the correct measure of value, the witness who testified upon this point was not qualified to testify to reproduction cost or depreciation. His opinion was correctly held to lack probative force upon this aspect. He could have testified concerning " sales " value or " economic " value of land and building, but appellant chose not to elicit his views in those respects concerning the building. Consequently the record is barren of evidence of the value of this real property as a whole, except that the total assessed valuation was $145,000. That might be regarded as some evidence of value (*Heiman* v. *Bishop,* 272 N. Y. 83), although for this purpose we cannot separate the land and building values comprising the assessment (Tax Law, § 21, subd. 3; *People ex rel. MacKay* v. *McGregor,* 271 App. Div. 798).

Under different circumstances, the deficiency of $5,950, being the total assessed valuation less the outstanding mortgage and Mrs. Semple's bond, might not be significant. This educational corporation, however, never had an endowment; its grantor, Semple Realty Corp., made no donation, nor has any other person made any contribution to appellant; Semple Realty Corp. was evidently insolvent and even though Mrs. Semple voluntarily accepted a bond which was $45,305.36 less than the indebtedness to her from Semple Realty Corp., nevertheless appellant obligated itself for more than the record shows the

real estate to have been worth. The entire purchase price was paid by the issuance of a bond for $111,746. If this had been an ordinary business transaction, Mrs. Semple's bond would at least have been likely to have been secured by a purchase-money mortgage. Not only did this bond represent merely the debenture obligation of this educational corporation, as did also the $16,784.50 bond given to buy the personal property, but also, as has been previously noted, neither of these bonds could be enforced until 1965, and meanwhile neither bond carried interest, except as interest might be declared annually by resolution of the board of trustees (of which Mrs. Semple was chairman), and only then if it were payable out of annually earned profits of the corporation. Both bonds contain clauses providing that interest shall be payable only if the net earnings of the school for any twelve-month fiscal period shall exceed expenses, and only if the trustees "in their uncontrolled discretion shall determine" that the funds necessary to pay such interest are not needed for the purposes of the school. Mrs. Semple expressly waived the payment of interest unless it were earned, and even if earned unless the board of trustees declared it to be payable. There is no acceleration clause maturing either bond in event of nonpayment of interest; these bonds represent no fixed liability of the corporation payable before the expiration of fifteen years, nor do they operate as liens upon any real or personal property.

No adverse criticism is made of Mrs. Semple or of anyone for having cast the transaction in this form. The question is whether the pattern which it took results in tax exemption.

Although this was in form a nonprofit, nonstock educational corporation, the practical effect was to place Mrs. Semple in the position of the holder of an equity interest in the enterprise. Her situation was analogous to that of a stockholder, having the right to receive dividends payable out of earnings if and when declared by a board of directors. Parenthetically, it may be observed that the saving in real property taxes if 351 Riverside Drive were held to be exempt would be approximately equivalent to the amount needed to enable the school trustees to declare and pay a return of 5% upon the obligations of the school held by Mrs. Semple.

We pass only upon the question as it is presented by the present record on appeal. This decision is not inconsistent with tax exemption for the school if Mrs. Semple were to cancel the bonds of appellant which she holds, or if she were to reduce appellant's legal liability to her so substantially that it would be reasonable to believe that any bonds which she might hold could be collected when due with interest out of assets of appellant corporation, irrespective of fluctuations in the current earnings of the school. No decision is rendered now concerning the legal effect of any future changes in arrangements which may be made, but the existing pattern of ownership of the enterprise in its various ramifications creates a present obstacle to exemption under subdivision 6 of section 4 of the Tax Law.

These conclusions are in accord with the law as heretofore established in this State (*Lawrence-Smith School* v. *City of New York,* 166 Misc. 856, affd. 255 App. Div. 762, affd. 280 N. Y. 805 [*People ex rel. Manlius School* v. *Adams,* 143 Misc. 459, affd. 232 App. Div. 869, affd. 257 N. Y. 549, is distinguished in the case cited, per SHIENTAG, J., 166 Misc. 860]; *People ex rel. Rye Country Day School* v. *Schmidt,* 266 N. Y. 196).

The order appealed from should be affirmed, with costs.

DESMOND, J. (dissenting). This real property, owned by a nonstock, nonprofit educational corporation and used exclusively for secondary school educational purposes, is entitled to tax exemption. The applicable statutory law, expressing an old and basic (see L. 1823, ch. 262; L. 1893, ch. 498; N. Y. Const., art. XVI, § 1) public policy of this State is part of subdivision 6 of section 4 of the Tax Law, which exempts from taxation " The real property of a corporation or association organized exclusively for * * * educational * * * purposes * * * and used exclusively for carrying out thereupon * * * such purposes " but further provides that " no such corporation or association shall be entitled to any such exemption if any officer, member or employee thereof shall receive or may be lawfully entitled to receive any pecuniary profit from the operations thereof, except reasonable compensation for services in effecting one or more of such purposes, or as proper beneficiaries of its strictly charitable purposes; or if the organization thereof for any such avowed purposes be a guise or pretense for directly or indirectly making any other pecuniary profit for such cor-

poration or association, or for any of its members or employees, or if it be not in good faith organized or conducted exclusively for one or more of such purposes ''.

In what respect does this parcel fail to meet those tests for exemption? Appellant was unquestionably '' organized exclusively for educational purposes '', as conclusively shown by its charter granted by the State Board of Regents in October, 1950. No one doubts that its real property was '' used exclusively '' for educational purposes and had been so used by petitioner and its predecessor since 1930. (The school itself, conducted by Mrs. Semple individually till turned over by her to petitioner in 1950, had been in existence since 1898.) Any lawful denial of exemption would, therefore, have to be based on proof and finding of one or more of these factual situations described in the second sentence above quoted from the statute: first, that an officer, member or employee of the corporation receives or is lawfully entitled to receive pecuniary profit from its operations; second, that the corporation is a mere guise or pretense for profit-making by it or its officer, member or employee; or, third, that the corporation is not in good faith organized for educational purposes.

The situation last above described, that is, of a corporation not in good faith organized for educational purposes, can be ruled out here without further discussion, since this petitioner corporation had no activity other than that of conducting an old, established private school for girls. Similarly, as to the second kind of situation above listed, that is, organization of a corporation for avowed educational purposes but actually as a guise or pretense for profit-making, there is no proof, permissible inference or finding in this case that anyone was disguising or pretending anything, or that the purpose, intent or possibility was to operate for individual profit. The undisputed proof is that this school had been running at a loss for years, before and after incorporation, and that it had been kept alive by loans and advances from Mrs. Semple, its founder and principal. Not only were there in fact no profits, but, under the Regents nonstock charter granted petitioner in 1950, any profits from operation could not lawfully be paid to any individual but, as Special Term pointed out, would have to be used for educational purposes. This case, therefore, readily distin-

guishes itself from the only two decisions of this court ratifying a refusal of such an exemption on " profit " grounds. The first of those decisions is *People ex rel. Rye Country Day School* v. *Schmidt* (266 N. Y. 196) where the land owner, although an educational corporation, had been specifically authorized to issue corporate stock and, on dissolution, to divide its assets among its stockholders. The other such decision is *Lawrence-Smith School* v. *City of New York* (166 Misc. 856, affd. 255 App. Div. 762, affd. 280 N. Y. 805). The Lawrence-Smith School, when previously owned by a business corporation, had mortgaged its realty for its full value and had become insolvent and indebted to its head master and an instructor for substantial sums. A new educational corporation was formed to take over the school property by assuming the mortgage and by agreeing to pay also, out of net earnings, not only the amounts owing to its two individual creditors but also to pay $10,000 to the former owners for " good will ". The courts, in *Lawrence-Smith* (*supra*), held that the actual purpose of the new arrangement was the making of profits, and the use thereof to pay up the debts (and to pay for the " good will ") of the former, and insolvent, profit-motive corporation. There is nothing remotely like that in the present record.

Special Term, in dismissing this petition, held that it did not appear from the record " that no pecuniary profit will be made by the corporation or by its officers and employees ", thus apparently relating the case to the first of the above-listed situations which make an educational corporation's real property taxable. The decision against petitioner would be sound, we assume, if it appeared affirmatively that corporate profits would, in fact and in law, be available to individuals, or, negatively, if petitioner had failed to show nonavailability. Looked at from either direction, this record conclusively proves petitioner's right to exemption. While Special Term held in effect that the facts showed that Mrs. Semple " receives or may be lawfully entitled to receive pecuniary profit from the operation " of the school, the court's opinion makes it plain that what it was discussing was not " pecuniary profit from the operation " at all, but an entirely suppositious, hypothetical profit to the vendor on the sale of the property occupied by the school, by another corporation controlled by Mrs. Semple, all as described below.

Plainly, the statute, when it referred to "pecuniary profit from the operations" of a school, meant just that, and intended to refuse exemption to those educational corporations only, where the insiders received or were lawfully entitled to receive corporate operating profits. But this petitioner's method of organization is such that, in the unlikely event that there be future profits, no individual will be entitled to take them. It has always been held (see *Matter of Mary Immaculate School*, 188 App. Div. 5, 7; *People ex rel. Manlius School* v. *Adams*, 143 Misc. 459, 466, affd. 232 App. Div. 869, affd. 257 N. Y. 549) that the right to exemption must be determined upon the facts as they exist at the time of making the assessment in question. Using that test here, it would be absurd to say that Mrs. Semple or anyone else was, in 1952 when these assessments were made, receiving or entitled to receive any operating profits from the school.

The "profits" referred to by the court below were, assuming that they existed at all, not operating profits but a supposed profit to the vendor on the sale of the realty, in 1950, by Semple Realty Corp., wholly owned by Mrs. Semple, to petitioner, the newly chartered educational corporation. The sale price was $150,950, paid as follows: $39,204 by means of the assumption by petitioner of a mortgage held by an outsider, and $111,746 by means of the giving by petitioner to the old corporation of an unsecured bond in that amount (later assigned by the old corporation to Mrs. Semple) with 5% annual interest payable in the discretion of petitioner's trustees if funds should be available therefor, the interest to be waived or forgiven if not paid within twelve months from its due date. This transaction, so held Special Term, resulted in a "profit" to Mrs. Semple, apparently because the court thought, although it did not expressly so find, that the real property was at that time worth less than $150,950. We reject the idea that any such theoretical difference could conceivably be the "profit" referred to in the statute. As was pointed out in the *Manlius School* decision (see 143 Misc. 459, 466, *supra*), the case in this respect is the same whether the property be sold for cash or bonds. If petitioner corporation here had borrowed $111,746 from an outsider and had paid it in cash to Mrs. Semple or her old corporation, would anyone assert, in the following year, that

the realty as owned by the new nonprofit educational corporation was taxable because someone was receiving or entitled to receive a " profit from the operations "? In actual fact, this record does not even show that there was a profit in the sense of a capital gain. Here are the figures:

Paid by Mrs. Semple for the property in 1930. .$200,000.00
Paid by petitioner in 1950................... 150,950.00
Appraisal by petitioner's expert before 1950 sale 167,933.34
Assessed value in 1950...................... 145,000.00

Petitioner's expert who made the appraisal at $167,933.34 testified, at the trial, to the same value (his appraisal went into evidence without objection) and, as the Special Term itself pointed out, no one was called by the city to refute this and it " thus stands uncontradicted ". The court pointed out that future operating profits, if any, could not benefit Mrs. Semple, since they could not be used " for   *   *   * anything other than the reasonable expenses for maintaining the school and the purchase price of the property ". In other words, the court itself found and held that there could not be any " profit " in the sense in which the statute uses that word, but then denied exemption on a mistaken definition of the word " profit ". We find it unnecessary, therefore, to analyze the figures listed above to show that they do not establish even the kind of capital gain which the court apparently had in mind. Nor is it necessary to analyze the qualifications of petitioner's expert witness above referred to, particularly since the record shows no objection by the city to the receipt in evidence of his uncontradicted appraisal.

The decision about to be made by this court is strikingly inconsistent with that made, on similar facts, in the *Manlius School* case (257 N. Y. 549, *supra*). But it is even more important to point out that this decision is a departure from New York's ancient, liberal tax exemption policies for educational institutions. That policy is as old as the 1823 statute cited in the first paragraph of this opinion, and its application is as recent in this court as *People ex rel. Doctors Hosp.* v. *Sexton* (295 N. Y. 553) and *People ex rel. Clarkson Memorial Coll.* v. *Haggett* (300 N. Y. 595). The People of the State approved it in 1938 when they adopted section 1 of article XVI of the State Constitution. In 1897 this court had written: " Indeed the

state has no policy against institutions of charity or learning. Throughout its history it has shown a deep interest in promoting such objects and in encouraging its citizens to help them. Aid to education has always been a prominent feature in its legislation " (*Amherst Coll.* v. *Ritch,* 151 N. Y. 282, 334–335). Court decisions abound with statements of the reasons underlying such tax exemptions (see, for instance, *Matter of Huntington,* 168 N. Y. 399, 407). One of the best such expressions is this from Justice IMRIE's opinion at Special Term (191 Misc. 621, 624) in the *Clarkson* case (*supra*): " Education is declared to be a function of the State. The State may, and does, provide many of the educational processes. It also may, and does, delegate its function in that respect to private corporations under suitable regulations. In such instances, real property of the delegatee, used for the purposes of its charter, is, in fact, devoted to a public purpose and thereby becomes quasi-public in nature. Nontaxation of public buildings and properties is not an act of grace but is a basic principle of our law; it is the rule and not the exception. Thus, school and college properties may be said to receive their rights of tax exemption, not as acts of grace from the sovereign, nor as personal exceptions to the rule that all real property bear its share of the cost of government, but both upon the principle of nontaxation of public places and as a *quid pro quo* for the assumption of a portion of the function of the State. Such a situation calls for a reasonable construction of the exemptive statute, ' so as to give full effect to the policy declared '. (*Yale University* v. *Town of New Haven,* 71 Conn. 316, 333; *People ex rel. Trustees of Mt. Pleasant Academy* v. *Mezger* [98 App. Div. 237, affd. 181 N. Y. 511], *supra; St. Barbara's R. C. Church* v. *City of New York,* 243 App. Div. 371.) "

The order should be reversed and the prayer of the petition granted, with costs in all courts.

CONWAY, Ch. J., DYE and FULD, JJ., concur with VAN VOORHIS, J.; DESMOND, J., dissents in an opinion in which FROESSEL, J., concurs; BURKE, J., taking no part.

Order affirmed.