Van Voorhis, J.
(dissenting). The object of this article 78 proceeding is to prevent the operation of the Southampton Bath and Tennis Club, Inc., as in violation of the village zoning ordinance. This club was formed in the Autumn of 1953. At that time the zoning ordinance permitted in the most restricted residential zone, where this club was situated, a “ Club house not conducted for gain” (art. IV, § 1, subd. A, par. [c]). After objection had been taken by the next door neighbors that this club failed to answer this description, but was in reality being operated for profit, the Zoning Board of Appeals granted a variance ‘1 for the use of the premises as a bath and tennis club with related activities as heretofore operated” (italics supplied) on condition that it be operated for the benefit of its members. Before this variance was granted, however, the Village Board of Trustees had amended the ordinance so as to exclude clubs entirely from residential districts of this character. The club can, therefore, be continued only if it was a pre-existing lawful use. The granting of this variance and the conditions attached was a nullity. There was no evidence of practical difficulty or unnecessary hardship, which is required under section 179-b of the Village Law (Matter of Forrest v. Evershed, 7 N Y 2d 256), nor was the variance in harmony with the intent of the ordinance. There would have been no occasion for this attempted variance unless the club was previously operated for gain. Either this club previously conformed or did not conform to the zoning ordinance of the village. If it conformed, the variance was superfluous. If it did not conform, no variance granted subsequent to the abolition by the local legislature of clubs in this zone could sanction its earlier operation, so as to give it a status which it did not possess prior to the extinction of such uses by the amendment to the zoning ordinance.
In rendering its decision granting this void variance, the Zoning Board of Appeals also said “We hold that the record *1012 establishes this Club to have been one ‘ not conducted for gain ’.” The board said this notwithstanding its annexation of a condition to the variance that the use of this property “ shall be restricted to operation by a bona fide membership corporation primarily and substantially, for the benefit of its members, as a private club with its membership electing its board of directors or trustees at least annually and also having a voice in club affairs at least equal to what this Board shall find to be the customary practice or procedure with reference to private clubs.” Other conditions annexed were that the club report annually to the Zoning Board of Appeals information showing that it was being operated in compliance with the zoning ordinance, and that no additional buildings, facilities or capital improvements should be installed without the written approval of the Zoning Board of Appeals to the end that the number of persons which the accommodations are designed to serve ‘ ‘ shall always be kept in line with the type of operation contemplated, the area involved and the character of the community.” The annexation of these unusual conditions, in the exercise of an assumed supervisory power in the Zoning Board over membership corporations, tacitly recognized that the operation of the club previously did not conform to the ordinance. These conditions were manifestly inserted due to the circumstance that the club was not managed by its members and served indiscriminately the patrons of the proprietors of the inns, restaurants and boarding houses in Southampton and vicinity.
Apparently the Board of Trustees of Southampton and the Zoning Board of Appeals were aiming at cross purposes. While the Board of Appeals was attempting to confirm the legality of the conduct of this beach club, the Village Trustees were doing what they could to legislate it out of existence. The Board of Appeals, of course, has no legislative power, which is locally delegated to the Village Trustees (Matter of Fox Meadow Estates v. Culley, 233 App. Div. 250, 251, affd. 261 N. Y. 506). This circumstance is not overcome by the resounding phraseology of the Board of Appeals in pronouncing a public policy for the village at variance with the public policy adopted by the Trustees. The Board of Appeals cannot enlarge a use contrary to the policy which has been enacted by the Village Board of Trustees,
*1013 The Southampton Bath and Tennis Club, Inc., is a membership corporation in the management of which the membership is forbidden to participate. Incorporation under the Membership Corporations Law does not establish that this is a “ Club house not conducted for gain ” within the former permitted scope of the ordinance. A membership corporation has to be something more than a front for persons endeavoring to make a profit from its operation as a business venture, if it were to qualify under the earlier provision of this ordinance. The club is located on real estate which constituted the country estate of the late Evander B. Schley. Title to the whole estate was taken by the promoters of the club for $25,000 on October 1,1953 in the name of the Overdune Corporation. Fifteen thousand dollars of this sum was obtained from a bank loan, and the balance of the purchase price was supplied by the seven incorporators of Overdune who are also the incorporators of the club. Two months later the club leased a portion of this property from Overdune at a stipulated annual rental of $15,000. The balance of the Schley estate was sold by Overdune in 1956 for $16,500. In 1957 Overdune sold the club property to a new corporation (in which a few of the original incorporators were interested) for $56,500 plus $9,000 to the club corporation for furniture and equipment. After deducting some capital improvements made by Overdune, this sale and the sale in 1956 resulted in a net gain to Overdune of $20,345.40 for property which they had bought in 1953 for $25,000. This profit was made in disregard of a letter — not legally binding — written by Overdune to the club saying that it was not the intention of Overdune to profit from the lease to the club, and that ‘ ‘ Ultimately title would vest in the Club when the expenditures of the originators had been returned.” The lease was assigned by Overdune to Southampton Holding, and a new lease was made at an annual rental of $12,000. A new letter was written by Southampton Holding to the club corporation, expressing an unenforcible intention that title would eventually belong to the club when the investment by Southampton Holding had been refunded along with capital improvements, mortgages and other items. Payment of these obligations included the profit to Overdune, contradicting the previous declaration of Overdune that it intended to receive no profit.
*1014 The various aspects of the enterprise have to be viewed as a totality in order to determine whether this was a “ Club house not conducted for gain ”. There is nothing sinister in the profit motive nor in the conduct of such a venture for gain. It just did not conform to the zoning ordinance if that was the fact. The large rental, the management and operation of the club by the promoters of the enterprise who owned the equity, and the circumstance that the club facilities were open to the use of the public patronizing the inns, restaurants and boarding houses in Southampton and vicinity — all of which are alleged as facts in the petition — created a question of fact requiring a trial in court concerning whether this was a clubhouse conducted or not conducted for gain.
The petition has been dismissed for legal insufficiency. That determination, it seems to us, is clearly erroneous. It is based on the mere form of the club as a membership corporation rather than on the substance of the transactions alleged in the petition. Matter of Semple School for Girls v. Boyland (308 N. Y. 382) and Matter of Carroll (New York Military Academy) (288 N. Y. 447) held that the financial structure and background need to be analyzed in order to determine whether a use is exclusively for the purposes of a tax exempt lessee corporation. In each case a nonprofit lessee corporation was held to be a vehicle through which others aimed to make a profit, which destroyed tax exemption. It was held to be irrelevant whether the lessee corporation actually made a profit or operated at a loss if it was contemplated that any profit would inure to the benefit of the sponsors. Justice Wenzel correctly stated in his dissent at the Appellate Division in this case that “ The question is not whether the tenant, respondent The Southampton Bath and Tennis Club, Inc., was operated for a profit but whether the owner was operating the property for anticipated profit. Nor is it important that the profit was not realized.” This is a correct statement of the law although it overlooks that, according to the facts alleged in the petition, an 80% profit was made on its investment in less than four years by Overdune. In the recent case of Civic Assn. at Roslyn Country Club v. Levitt & Sons (7 N Y 2d 894) the club, as here, was not operated by the members but by the sponsors of the enterprise. As the memorandum of this court indicates, its being called a club did not preclude a profit to the developers. There the zoning *1015 ordinance was amended to enable it to be operated in the area as a commercial enterprise.
The circumstances here are similar in essentials to Matter of Castle Hill Beach Club v. Arbury (2 N Y 2d 596) where, in effect, the public was admitted to the facilities of a beach club. Castle Hill was held not to be a club authorizing discrimination under section 40 of the Civil Bights Law. It would be interesting to consider what the situation would be regarding this beach club at Southampton, if a local hotel proprietor denied the facilities of this club to some but not all of the guests at his hotel on account of race, creed or color. Such practices would not be sanctioned. The Castle Hill decision would prevent the Southampton Bath and Tennis Club, Inc., from being held to be a club. The Castle Hill Beach Club was a membership corporation lessee.
The court apparently would hold that the allegations of this petition would warrant a trial of the issue except for the form in which this litigation comes into court. The Building Inspector of Southampton (after the correction of a preliminary difficulty concerning the design of the out buildings) granted a certificate of occupancy on an application of the club stating •that the club owned the property. This certificate was evidently issued on the basis that this constituted a “ Club house not conducted for gain ’ ’ within the uses permitted by the zoning ordinance. When the Building Inspector discovered that the application falsely stated that the club owned this property, and the other circumstances came to light indicating that it was operated for gain according to the facts alleged in the petition, the Building Inspector- — -after objection by the neighbors who also had recently learned the facts rendering the use illegal— revoked this certificate of occupancy by reason of the false statement of ownership contained in the petition, which he had power to do (People ex rel. Finnegan v. McBride, 226 N. Y. 252; Matter of Rosenbush v. Keller, 247 App. Div. 748, affd. 271 N. Y. 282; Rollins v. Armstrong, 226 App. Div. 687, 752, affd. 251 N. Y. 349; Southern Leasing Co. v. Ludwig, 217 N. Y. 100; Town of Oreenburgh v. Buser, 285 App. Div. 1090). These cases hold not merely that the Building Inspector was empowered to revoke the certificate of occupancy but that it was his duty and that he could be compelled to revoke it if the use did not conform to the zoning ordinance. That would be true *1016 regardless of any misstatement in the application for the certificate, although this false statement in the application was material to whether the club was operated for gain. After the Zoning Board of Appeals had reversed the Building Inspector and restored the certificate of occupancy, petitioners-appellants commenced this article 78 proceeding to review and to correct the disposition made by the Board of Appeals. The Building Inspector does not act in a quasi-judicial capacity. His acts were purely administrative. If he errs, his acts are subject to correction in the courts by mandamus rather than by certiorari (Matter of Small v. Moss, 277 N. Y. 501). Petitioners here, according to the facts alleged in the petition, are entitled to enforce a clear legal right. This, in turn, depends upon whether application is made to the courts to control his action in respect of a matter with which he has been vested with discretion (Matter of Gimprich v. Board of Educ. of City of N. Y., 306 N. Y. 401, 405-408; Matter of Small v. Moss, supra). In the present instance the Building Inspector is vested with no discretion to adjudicate whether this beach club is a nonconforming prior lawful use. If it is such a use, then a certificate of occupancy must issue. • Its issuance could be compelled by mandamus as a clear legal right by the same token whereby the issuance of a building permit for the erection of bathhouses and cabanas upon shore front property was compelled in Matter of Little v. Young (274 App. Div. 1005, affd. 299 N. Y. 699), or for the alteration of a dwelling in Matter of Davison v. Flanagan (273 App. Div. 870). Where a property owner is entitled to continue a nonconforming use, it is treated as “ a strict legal right” (Matter of 440 E. 102nd St. Corp. v. Murdock, 285 N. Y. 298). Whether or not a party is entitled to continue a prior use, or should be enjoined from doing so, is for the courts to decide (People v. Miller, 304 N. Y. 105). It is for the courts to decide here whether this beach club at Southampton was a “ Club house not operated for gain” before the zoning ordinance was amended by prohibiting such uses effective at the beginning of 1958. If it fell outside that category, the certificate of occupancy was properly revoked. If it was a clubhouse not operated for gain, then the certificate of occupancy was properly restored and the order appealed from should be affirmed.
The material parts of section 179-b of the Village Law, under which the Zoning Board of Appeals acted, provide that such *1017 Board of Appeals shall review “ any order, requirement, decision or determination made by an administrative official charged with the enforcement of any ordinance adopted pursuant to this act. ’ ’ In reviewing such determinations, it is provided that the Board of Appeals ‘ ‘ shall have all the powers of the officer from whom the appeal is taken. ’ ’ In other words, in deciding whether the Building Inspector of Southampton correctly revoked the certificate of occupancy for this beach club, insofar as this issue is affected by the claim that it was a prior lawful nonconforming use, the powers of the Board of Appeals were identical with those of the Building Inspector. The nature of the power is not changed by the particular board or officer that exercises it, but the power classifies itself according to its function (Matter of Rothstein v. County Operating Corp., 6 N Y 2d 728). If the Building Inspector erred in concluding that this beach club fell outside of the classification of a “ Club house not conducted for gain ”, then it lay within the power of the Board of Appeals to correct his error and to restore the certificate of occupancy. It had the same power possessed by the Building Inspector. It could reverse the Building Inspector if, in its administrative judgment, it determined that the Building Inspector was mistaken in concluding the facts to be that this was not a lawful nonconforming use. For this purpose, the board was just one administrative agency placed over another. The Board of Appeals cannot finally determine to the exclusion of the courts questions of fact concerning whether this beach club constituted a permitted prior use. Consequently the substantial evidence rule does not apply. Being vested with only the powers of the Building Inspector in this respect, the Board of Appeals could overrule his administrative judgment, but the courts and not the Board of Appeals are the appointed forum for the determination of the facts and the law underlying whether this was a prior lawful nonconforming use. The situation regarding this is different from practical difficulty and unnecessary hardship cases where the board exercises discretion in granting variances. In such cases the jurisdiction of the courts is more limited. Here no discretion is reposed in either the Building Inspector or the Board of Appeals. Neither was vested with jurisdiction to try whether this was a lawful prior use.
Here the courts are vested with power to determine the facts concerning the nature of this club, without being concluded by *1018 any determination of the Zoning Board. The courts have always exercised jurisdiction to determine the facts with respect to prior uses. That jurisdiction is not transferred to the Zoning Board for the mere reason that it acted in an administrative capacity and without being charged with the exercise of discretion in restoring this certificate of occupancy. The courts could compel the revocation of the certificate, if the zoning ordinance was violated, even if the Building Inspector had never revoked it. The issuance by a Building Inspector of a certificate of occupancy or, in this case, by the Board of Appeals acting under the same authority cannot amend or dispense with the enforcement of a zoning ordinance if the certificate has been issued in violation of the provisions of the ordinance. The substantial evidence rule has no application to this situation.
If the Zoning Board had been the tribunal to decide whether this constituted a lawful prior nonconforming use, its determination would still need to be annulled by reason of the exclusion by the board of evidence offered by the petitioners at the hearing before the board (record, pp. 26-30) concerning what persons would benefit personally from the operation of the club and the management of the club as a private enterprise rather than as a membership corporation.
The order appealed from dismissing the petition for insufficiency in law should be reversed, and respondents directed to serve and file their answers pursuant to section 1291 of the Civil Practice Act.
Order affirmed.