■ In the Matter of the CHURCH HOME OF THE PROTESTANT EPISCOPAL CHURCH IN THE CITY OF ROCHESTER, Respondent, and NEW YORK STATE DEPARTMENT OF HEALTH, Intervenor-Respondent, v WALLACE J. WAGNER, as Assessor of the City of Rochester, Appellant.—Order and judgment unanimously affirmed with costs. Memorandum: Respondent Church Home of the

Protestant Episcopal Church in the City of Rochester (home) brought these proceedings under article 7 of the Real Property Tax Law to have the assessment against its real property corrected and canceled and for the refund of taxes paid as a result of the assessment. The New York State Department of Health was permitted, by stipulation, to intervene, and its petition seeks the same relief as does the home. The City of Rochester (city) appeals from the order granting respondent home the relief prayed for in its petition. The facts are largely documented and undisputed. The home was incorporated in 1869 under the "Act for the incorporation of benevolent, charitable, scientific and missionary societies" (L 1848, ch 319) and is presently certified as a New York not-for-profit corporation—type B. The existing certificate of incorporation describes its purposes in pertinent part as follows: "To maintain a home and to minister to and provide personal and nursing care in the spirit of Christian love and devotion for men, women and couples residing in the area of the Rochester Diocese of the Episcopal Church * * * To solicit, receive, hold, use and dispose of subscriptions, gifts, grants, donations, bequests and devises for the benefit of the Home and in order to effectuate the purposes thereof." This certificate was approved by the State Department of Social Welfare on April 21, 1966. The home is licensed by the State under the State Health Code to operate two facilities, a Skilled Nursing Facility (SNF) and a Health Related Facility (HRF). Both facilities render health care to individuals and most of the residents are elderly persons. These facilities are operated through the use of many unpaid volunteers who give in excess of 10,000 hours of care annually. No one receives compensation except employees and professionals. The home is annually audited by the Health Department and has been rated by it as offering high quality health and nursing care. Private contributions from churches and individuals subsidize the home, but it has operated at substantial losses, the operating costs having exceeded the revenue received from patients either directly from their own funds or indirectly from Medicaid and Medicare assistance. Through June, 1976 the total deficit of both facilities for the first six months was $129,186. Individuals are admitted to the home regardless of their ability to pay for their care. Prior to the city's tax assessment the home has always been recognized as a charitable corporation and has been entirely exempt from taxes by any governmental unit. Exemption from Federal taxation was secured in 1970 under section 501 (subd [c], par [3]) of the Internal Revenue Code, being recognized in the terms of the statute as organized and operated "exclusively for * * * charitable * * * purposes". Both the Federal and State governments have held contributions to the Home to be deductible for State and Federal income, gift and estate tax purposes. Prior to the present assessment no real property tax has been assessed by the city in the 108 years of the home's existence. The State Health Department's petition asserts that none of the approximately 108 non-profit health care facilities in the State pays real property taxes to local political subdivisions or to the State. It states further that as an approved member of the Medicaid Program the Home has met all of the requirements of the program, including a nondiscriminatory policy for patients' admissions, and provides care to persons actually in need. Special Term properly granted summary judgment to the home, for the city presented no evidence to demonstrate any unresolved material issue. The city's contention that it has had no opportunity to engage in discovery proceedings or to challenge the facts submitted by the home is without merit. These proceedings were commenced on April 28, 1976. From that date until the return date of the

summary judgment motion, December 20, 1976, the city failed to request disclosure (CPLR 408), nor does the city contend that the home did not fully disclose all financial statements and records requested of it. The city had ample opportunity to seek discovery, and its failure to do so provides no basis for denial of respondent's motion. The operation of the home meets fully the requirements of section 421 (subd 1, par [a]) of the New York Real Property Tax Law and justifies its exemption from real property taxation. The purposes for which it was organized and its activities meet all the tests which we stated in *Genesee Hosp. v Wagner* (47 AD2d 37, affd 39 NY2d 863). The home is used exclusively for the purposes enumerated in the statute. The test of a charitable use is succinctly stated in *Matter of MacDowell,* (217 NY 454, 460): "If the purpose to be attained is personal, private or selfish, it is not a charitable trust. When the purpose accomplished is that of public usefulness unstained by personal, private or selfish considerations, its charitable character insures its validity". The existence and operation of the home truly " 'tend[s] to promote the well-doing and well-being of social man' " *(Matter of Rockefeller,* 177 App Div 786, 791, affd 223 NY 563, quoting *Ould v Washington Hosp.,* 95 US 303, 311; see also, *People ex rel. Untermeyer v McGregor,* 295 NY 237; *American-Russian Aid Assn., v City of Glen Cove,* 41 Misc 2d 622, affd 23 AD2d 966). The interpretation of the exemption statute urged by the city would "defeat its settled purpose, which in this instance is that of encouraging, fostering and protecting" the rendering of health and nursing services to persons in genuine need of such care on a non-profit basis *(People ex rel. Watchtower Bible & Tract Soc. v Haring,* 8 NY2d 350, 358). The city's reliance on *Matter of Association of Bar of City of N. Y. v Lewisohn* (34 NY2d 143) and *Matter of Swedenborg Foundation v Lewisohn* (40 NY2d 87) is misplaced. The facts in both of those cases demonstrate clearly that the organizations claiming tax exemption were not organized or operated "exclusively for * * * charitable * * * purposes". As stated in *Matter of Trustees of Sailors' Snug Harbor in City of N. Y. v Tax Comm. of City of N. Y.* (26 NY2d 444, 450) "[i]t would be a procedural anachronism if undisputed facts which could lead to a proper judgment nevertheless had to be sent for trial under an article 7 tax proceeding". (Appeal from order and judgment of Monroe Supreme Court—Real Property Tax Law, art 7) Present—Marsh, P. J., Moule, Cardamone, Simons and Goldman, JJ.