OPINION OF THE COURT
Martha K. Zelman, J.
facts
Petitioner, Marino P. Jeantet Residence for Seniors, Inc. (hereinafter referred to as Jeantet), brings this CPLR article 78 proceeding asking for a judgment:
(1) Annulling and setting aside respondents’ determination which denied Jeantet’s application for exemption of its real property from New York City real estate taxes;
(2) Directing respondents to grant Jeantet’s applications retroactive to January 23, 1978; and
(3) Canceling, annulling and enjoining the collection of the real estate taxes imposed on Jeantet’s real property effective as of January 23, 1978.
Petitioner, Jeantet, is the owner of real property located at 61-80 Woodhaven Boulevard, Rego Park, Queens County, *1083 New York (hereinafter called the Premises). Petitioner argues that it is entitled to an exemption from taxation under section 421 (subd 1, par [a]) of the New York Real Property Tax Law.
Respondents in its verified answer raise five defenses to the granting of the application of Jeantet for said exemption. The five defenses are as follows:
(1) The activities of Jeantet are such that it can only qualify for an exemption from taxation under the New York Public Housing Finance Law and related statutes governing housing corporations and Jeantet is not within the scope of any such statutes; (2) section 421 of the Real Property Tax Law does not apply to Jeantet’s use of the Premises since exemption for such use is specifically provided for under the Public Housing Finance Law and related statutes; (3) Jeantet is not organized or conducted exclusively for one of the purposes stated in section 421 (subd 1, par [a]) of the Real Property Tax Law; (4) Jeantet cannot maintain a proceeding for an exemption from New York City real estate taxes for the 1977/1978 fiscal year because Jeantet was not the owner of the subject property on January 25, 1977, the date of taxable status; and, lastly, (5) Jeantet is not entitled to an exemption under section 421 (subd 1, par [a]) because it does not meet certain of the additional requirements of section 421 (subd 1, par [d]) of the Real Property Tax Law.
The court finds, after listening to oral argument for both sides, that the first three affirmative defenses raised by the respondent are without merit. (See Matter of Belle Harbor Home of Sages v Tishelman, 100 Misc 2d 911.) Respondent tax commission, itself, in arguing admits the case at bar is indistinguishable from the adult care facility involved in Belle Harbor.
Petitioner Jeantet alleges that on January 23,1978 under the authority granted to it in its certificate of incorporation it purchased for good and valuable consideration the aforesaid Premises from one DHNH Realty Corporation, which was recorded in the office of the city register in the County of Queens on January 24, 1978 in reel 1046, page 1139. Petitioner alleges that since the Premises were bought they *1084 have been used exclusively for carrying out charitable purposes mainly the not-for-profit organization care for senior citizens. Petitioner alleges 170 permanent residents who are senior citizens reside at said Premises, 4 of whom are privately paid residents. Petitioner also alleges that respondent, Commissioner of Finance of the City of New York, is charged with the duties of preparing and certifying the assessment rolls for real property in New York City and collecting real estate taxes due and payable to the City of New York as determined by the city council. Respondent is an agency of New York City charged with the duty of reviewing and correcting all assessments of real property for taxation in New York City. Jeantet provides extensive services and cares for its elderly residents and also provides house accommodations. Jeantet is controlled in accordance with the requirements of the New York Social Services Law and regulated by Social Services Law. A regulation states in addition to room and board, housekeeping services, personal care services, supervision of attendants and such other nonmedical services and to sustain necessary daily living activities such as personal hygiene and social administration shall be provided by a “Not-for-profit home for adults”, such as Jeantet. (See 18 NYCRR 485.2.) The Department of Social Services has found that Jeantet is organized for a charitable purpose within the meaning of section 421 of the Real Property Tax Law.
As to fourth affirmative defense wherein respondent claims that Jeantet is not entitled to a real estate tax exemption for the 1977/1978 fiscal year because Jeantet didn’t own the Premises on January, 1977, petitioner agrees and does not seek a tax exemption for the 1977/1978 fiscal year, petitioner, Jeantet, is only seeking a petition from the New York State real estate taxes for the 1978/1979 fiscal year onward.
This court finds that only the fifth affirmative defense raised in this matter distinguishes the case at bar from the Belle Harbor case. This is the argument that Jeantet purchased from the previous owner in bad faith. First, respondent argued that Jeantet is an adult home as a guise or under the pretense for making pecuniary profit for the *1085 corporation. Secondly, the respondents claim that Jeantet was not organized for an exempt purpose.
The court fails to see the logic in this argument. Respondent has not produced any proof which would enable this court to sustain that Jeantet has shown “bad faith” or that it is not organized for a charitable purpose as established by its petition. Respondent argues that Jeantet does not subsidize its residents; that all residents pay fees derived from their own resources or that the government granted personally to them through Social Security payments. Respondent therefore questions whether this is “the meaning of charity” within the purview of section 421 (subd 1, par [a]) of the Real Property Tax Law. Respondent argues that Jeantet assumed $3,000,000 in mortgage obligations in purchasing a financially defunct home for the aged when it was worth one third of its price. Respondent’s contention is that this corporation is realizing financial gain to the mortgagees. Jeantet bought the subject Premises from a corporation which was not “an exempt” organization. Subject Premises were owned by DHNH Realty Corporation, which leased it to the Steven Mark Home for Adults. This seller was practically bankrupt and was in default in its mortgage payments and in arrears in its property and real estate taxes and water and sewage charges. At the time of the sale the seller was encumbered with a mortgage of $1,818,495, plus tax, water and sewage tax arrears of $212,904. Respondent argues that in a previous certiorari proceeding for two tax years preceding the sale of Jeantet, the court reduced the assessments from $1,115,000 to $750,000 based on competitive appraisals. Respondent argues that since petitioner purchased the property for $3,000,000, it had overpaid. Respondent failed to show that any of the members, directors or officers of Jeantet had any affiliation whatsoever with DHNH Corporation, the prior owner of the Premises or with the new mortgagees known as the Thrift Associations Service Corporation, who hold the first mortgage on the Premises. Jeantet, DHNH and Thrift Associations Service Corporation are distinct corporations, have no common directors, officers or shareholders. Jeantet has always operated with the Not-For-Profit Corporation Law’s parameters insuring that any income or *1086 profits Jeantet earns will not be distributed to any of its members, officers or employees. The court finds that the fact that Jeantet pays interest and principal to mortgagees of the subject Premises who may profit from this payment is not relevant in denying Jeantet a tax exemption when the mortgagees are an independent entity and the subject Premises were bought in what seems to be a legitimate transaction.
Thrift Associations Service Corporation (hereinafter referred to as TASCO) is the holder of a first mortgage on the Premises. It is a New York corporation owned by approximately 66 New York savings and loan associations. Petitioner argues that TASCO holds substantial mortgage investments in a number of health care facilities and adult homes in New York State. Respondent argues that the sale to petitioner was a sham because they paid more than the Premises were worth. Petitioner is in no way affiliated with TASCO or prior owner. Whether a corporation is entitled to a real estate tax exemption is dependent on the “nature” of the use of real property not the value of the real property. The court finds it unrealistic that such an organization as TASCO would lend $3,000,000 if its mortgage had exceeded the value of the property.
Respondents rely on Lawrence Smith School v City of New York (166 Misc 856, affd 255 App Div 762, affd 280 NY 805), wherein the Court of Appeals affirmed the denial of a real property tax exemption on the ground that petitioner, though ostensibly nonprofit making in character, was really operating under a pretense directly or indirectly for making a profit for the corporation from which it purchased the subject property. The affirmance was based upon Justice Shientag’s findings (166 Misc 856, 859, supra) that the assets of a stock corporation, consisting of a school in operation and a school building, were transferred to a nonprofit educational corporation in consideration of the assumption by it of all the liabilities of the stock corporation. In addition, the nonprofit organization undertook to pay three additional obligations, one in consideration of “good will”, and two representing additional debts of the stock corporation. The Trial Judge also found that the stock *1087 corporation was insolvent, and that the new corporation assumed liabilities beyond the assets it had acquired. The court concluded (supra, p 859) that “the arrangement was entered into to make good such obligations out of profits made in the conduct of the school.”
The issue before this court is really only that of whether or not Jeantet’s use of the Premises comes within the law that requires a real estate tax exemption because the use of the subject Premises as an adult care facility is a recognized exempt property under New York law. (See Matter of Church Home of Prot. Episcopal Church in City of Rochester v Wagner, 58 AD2d 972; American-Russian Aid Assn. v City of Glen Cove, 41 Misc 2d 622, affd 23 AD2d 966.)
This case should be distinguished from the case of Beverly Hills Cemetery Corp. v Rush (201 Misc 534), where it was claimed that an allegedly nonprofit corporation organized to operate a cemetery was entitled to a real estate tax exemption. In that case, the promoters of the nonprofit corporation personally acquired property for $28,000 which was then transferred to the corporation one week later. The corporation agreed to pay the promoters $500,000 and issued certificates of indebtedness for that amount paying 6 % annual interest. At the time the proceeding to obtain the tax exemption was brought, the certificates of indebtedness, which had been increased to $1,200,000, were held by a business corporation whose officers and directors were the same as the corporation claiming the exemption. The court denied the tax exemption for the following reasons (Beverly Hills Cemetery Corp. v Rush, supra, p 538): “Considered generally, the financial operations surrounding the organization of the corporation, and the issuance of the corporate certificates of indebtedness for a palpably inadequate consideration ; the subsequent reissues of corporate certificates of indebtedness for manifestly inadequate consideration; the intimate relationship existing between the presumably non-profit-making plaintiff corporation and the other admittedly profit-making corporations, with the interlocking of directors and officers; the failure in numerous instances to follow the requirements of the Membership Corporations Law governing the conduct and operation of such corpora *1088 tians; and the other evidence contained in the record, all establish to the satisfaction of the court that the cloak assumed by the plaintiff corporation was purely a guise and pretense to cover a pecuniary and commercial undertaking.”
The decision in Beverly Hills Cemetery demonstrates that payment of a purchase price in excess of the value of real property is only relevant in a proceeding to obtain a tax exemption under section 421 of the Real Property Tax Law where (1) the purchase price is “palpably inadequate consideration” for the property and, more importantly, (2) there is substantial evidence of collusion between the purchaser and seller for the purpose of conferring a pecuniary benefit on an individual associated with the entity seeking the tax exemption. Thus, even if the court finds that Jeantet paid more for the Premises than it was worth, there are no additional facts which indicate any lack of good faith on the part of Jeantet or any of its officers, employees or members. This court, therefore, must find that the adult home is entitled to the real estate tax exemption as requested in the petition.
Accordingly, the petition is granted.